UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 3:11-cr-18-J-34JBT

TERRY D. GILLIS

_____/


## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on the Government's Oral Motion for entry of

an order allowing the involuntary medication of Defendant to restore his competency

to stand trial ("the Motion") (Doc. 43), brought during an evidentiary hearing held on

November 4, 2011 ("*Sell* hearing") (*see* Doc. 42).  Defendant opposes the Motion.

Following oral argument, the Government filed a memorandum of law for the Court's

consideration.  (Doc. 44.)[2]  The matter is now ripe for consideration.  For the reasons

stated herein, the undersigned recommends that the Motion be **GRANTED** to the extent

that the Court enter a contempt-backed order that Defendant accept the treatment

prescribed by the Government's doctors to restore his competency, and if he fails to

---

[1] Within fourteen days after service of this document, specific, written objections
may be filed in accordance with 28 U.S.C. § 636, Rule 59, Federal Rules of Criminal
Procedure, and Rule 6.02(a), Local Rules, United States District Court, Middle District of
Florida.  Failure to file a timely objection waives a party's right to review.  FED. R. CRIM. P.
59.

[2] Defendant was also given an opportunity to file a memorandum of law (*see* Doc.
41), but he did not do so.

comply with that order, enter an additional order authorizing the forced injection of antipsychotic medications in accord with the Government's doctors' proposed treatment plan contained in their report.

## I.    Issues Presented and Summary of Recommendation

The Government requests an order authorizing the involuntary medication of Defendant to restore his competency to stand trial.  (Doc. 43.)  A mentally ill defendant "has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'"  *Sell v. United States*, 539 U.S. 166, 178 (2003) (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990)).  However, this liberty interest can be overcome if: (1) "*important* governmental interests are at stake"; (2) "involuntary medication will *significantly further* those concomitant [government] interests"; (3) "involuntary medication is *necessary* to further those interests"; and (4) "administration of the drugs is *medically appropriate, i.e.*, in the patient's best medical interest in light of his medical condition."  *Id.* at 180-81.  "The *Sell* factors do not represent a balancing test, but a set of independent requirements, each of which must be found to be true before the forcible administration of psychotropic drugs may be considered constitutionally permissible."  *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 691 (9th Cir. 2010) (citation omitted).

As discussed herein, after conducting a *Sell* hearing, the Court finds that each of the *Sell* factors is satisfied, and recommends that the Court enter a contempt-backed order that Defendant accept the treatment prescribed by the Government's doctors to restore his competency, and if he fails to comply with that order, enter an additional

order authorizing the forced injection of antipsychotic medications in accord with the Government's doctors' proposed treatment plan contained in their report.

## II.    Background

On January 27, 2011, the Government filed a one-count indictment, charging Defendant with possession of a shotgun having a barrel or barrels of less than 18 inches in length, as defined in 26 U.S.C. § 5845, which was not registered to Defendant in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d). (Doc. 1.) Defendant allegedly possessed the firearm, along with ammunition, while en route to a Naval Installation "because 'they' ['the people'] were telling him to kill the President." (Doc. 44 at 8). Defendant faces a maximum term of imprisonment of ten years. 26 U.S.C. § 5871. The Government moved the Court to issue a capias for Defendant (Doc. 2), which the Court granted (Doc. 3).

On February 10, 2011, Defendant was arrested and brought before the undersigned for an initial appearance. (Doc. 6.) At Defendant's initial appearance, the Government moved to detain Defendant pending trial (Doc. 7), to continue Defendant's detention hearing until the following day (Doc. 8), and for a competency examination (Doc. 15). The Court granted the Government's motion to continue the detention hearing, and ordered that Defendant be detained pending that hearing. (Doc. 9.) Upon completion of Defendant's detention hearing, held on February 11, 2011, the Court granted the Government's motion for detention pending trial. (Doc. 10; *see also* Doc. 13.) On February 17, 2011, the motion for a competency examination was granted, and Dr. Alan J. Harris, an expert in the field of psychology, was appointed to conduct an

examination of Defendant to determine his competency to stand trial. (Doc. 16.)

Thereafter, the undersigned received a report from Dr. Harris dated March 2, 2011. A competency hearing was held on March 24, 2011, at which Dr. Harris testified. (Doc. 23.) Dr. Harris testified that Defendant was mentally incompetent. Specifically, he testified that Defendant could not assist in his own defense because, although Defendant had a factual understanding of the proceedings and charges against him, he did not have a rational understanding of the proceedings, or the ability to rationally assist his attorney as a result of delusional disorder. On March 25, 2011, the Court entered an order finding Defendant incompetent to stand trial and committing him to the custody of the Attorney General for a psychiatric or psychological examination pursuant to 18 U.S.C. §§ 4241(d) and 4247(b). (Doc. 24.)

On June 14, 2011, Defendant was transported by the U.S. Marshal to the Federal Medical Center in Butner, North Carolina ("FMC Butner"). Upon arriving at FMC Butner, Defendant was evaluated by staff there for a period of approximately three months. A report dated September 14, 2011 and signed October 14, 2011 ("the Report") was authored by evaluators, Robert E. Cochrane, Psy. D. and Bryon Herbel, M.D. In the Report, these evaluators documented all of their methodology, findings, and recommendations. For instance, they described the procedures they followed in evaluating Defendant. They summarized Defendant's statements and demeanor. They documented their impression that, among other things, Defendant is suffering from delusional disorder. They discussed their findings within the framework of the issues set forth in *Sell*. Finally, based on their findings, they recommended that the Court

4

authorize involuntary administration of antipsychotic medication in accord with their proposed treatment plan, which is also included in the Report. The Report was admitted into evidence at the subsequent *Sell* hearing. (Ex. 1.)

On October 19, 2011, the Government moved the Court to enter an order extending the time period of Defendant's custody at FMC Butner for 30 days and to schedule a *Sell* hearing to determine whether Defendant should be involuntarily medicated to restore his competency to stand trial. (Doc. 35.) The Court granted both requests contained in that motion (Docs. 37 & 38), and the *Sell* hearing was scheduled for November 4, 2011 (Doc. 38).

As scheduled, the *Sell* hearing was held on November 4, 2011. (Doc. 42.) Defendant's evaluators at FMC Butner, Drs. Cochrane and Herbel, testified via videoconference. Dr. Cochrane was recognized as an expert in clinical and forensic psychology. Dr. Herbel was recognized as an expert in psychiatry and forensic psychiatry. Following their qualification as experts, Drs. Cochrane and Herbel testified regarding the issues addressed by the U.S. Supreme Court in *Sell* as they apply to Defendant. In addition, the Court heard from Defendant. Defendant indicated that, although he does not want to be forcibly medicated largely because of the risks of serious side effects, if the Court were to enter a contempt-backed order that he take antipsychotic medications, he would comply with that order. He also expressed dissatisfaction with his current conditions of confinement.

## III.    Proposed Treatment Plan

The Report includes the Government's doctors' proposed treatment plan for

Defendant ("the treatment plan"). (Ex. 1 at 30-34.) As discussed in the treatment plan and elsewhere in the Report, there are three available antipsychotic drugs: haloperidol (trade name, Hadol); fluphenazine (trade name, Prolixin); and risperidone (trade name, Risperdal Consta). The treatment plan indicates that any of the three may be used to treat Defendant depending on the circumstances, for example, if Defendant has an adverse reaction to one of the drugs. It specifies the doses to be administered for each drug. It specifies how Defendant will be monitored through laboratory testing. It states that, if forced injection is necessary, before injecting Defendant with any long-acting antipsychotic medication, a test dose must be administered "in order to identify any rare idiosyncratic reaction" to the medication. (Ex. 1 at 32.) It sets forth what the doctors will do if Defendant exhibits any adverse side effects to a particular medication.

The treatment plan also sets forth procedures to minimize the intrusiveness of the administration of the prescribed medication. For instance, it states that Defendant will be encouraged and given an opportunity to take the prescribed medication orally. However, it also contains procedures to be utilized if Defendant refuses oral medication, including restraining Defendant and injecting him with the prescribed medications.

In regard to the length of time Defendant is to be treated, the evaluators propose that they be "allowed the full four month period of treatment as described under Section 4241(d) after Mr. Gillis has arrived at FMC Butner." (*Id.* at 35.)[3]

_____

[3] However, the four-month time period they refer to, which is provided in 18 U.S.C. § 4241(d)(1) is inapplicable as that provision relates to the evaluation period, which has already occurred. The applicable provision is 18 U.S.C. § 4241(d)(2), which provides that Defendant may be hospitalized for "an additional reasonable period of time until—(A) his
(continued...)

## IV.    Analysis

A mentally ill defendant "has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" *Sell*, 539 U.S. at 178 (quoting *Harper*, 494 U.S. at 221). However, this liberty interest can be overcome if: (1) "*important* governmental interests are at stake"; (2) "involuntary medication will *significantly further* those concomitant [government] interests"; (3) "involuntary medication is *necessary* to further those interests"; and (4) "administration of the drugs is *medically appropriate, i.e.,* in the patient's best medical interest in light of his medical condition." *Id.* at 180-81. "The *Sell* factors do not represent a balancing test, but a set of independent requirements, each of which must be found to be true before the forcible administration of psychotropic drugs may be considered constitutionally permissible." *Ruiz-Gaxiola*, 623 F.3d at 691 (citation omitted).

Prior to considering the *Sell* factors in determining whether forced medication is appropriate, a court "should ordinarily determine whether the Government seeks, or has first sought, permission for forced administration of drugs on [the grounds set forth in *Harper*]; and, if not, why not." *Sell*, 539 U.S. at 183. In *Harper*, the U.S. Supreme Court

_____

(...continued)

mental condition is so improved that trial may proceed . . . ; or (B) the pending charges against him are disposed of according to law; whichever is earlier." 18 U.S.C. § 4241(d)(2).

Given Dr. Herbel's testimony at the *Sell* hearing that many of the defendants in a particular study required from three to five months of treatment for the symptoms to resolve, and his recommendation of at least four months of treatment for Defendant, the Court finds four months of treatment reasonable at this point. However, the reasonableness of the length of treatment may change as treatment proceeds, and the Court will monitor the situation by reviewing the monthly reports, which the undersigned is recommending the evaluators at FMC Butner be required to file with the Court.

held that an inmate with a "serious mental illness" may be treated "with antipsychotic drugs against his will, if the inmate is dangerous to himself or others [while confined] and the treatment is in the inmate's medical interest." 494 U.S. at 227. In the Report, Drs. Cochrane and Herbel gave the following opinion:

> During the evaluation period at FMC Butner, Mr. Gillis has been able to function adequately in the open population and in 23-hour a day lockdown status of the Mental Health Department without engaging in behavior which would pose a risk of being dangerous to himself or others. During the daily interactions with staff to provide him with meals, nursing care, and medical attention, he has not engaged in any behavior which would pose a risk of him being dangerous to himself or others. There is no convincing evidence Mr. Gillis poses a substantial risk of dangerousness in the current conditions of his confinement at FMC Butner. Therefore, we opine Mr. Gillis does not currently meet the criteria for involuntary treatment under the grounds of *Washington v. Harper*.

(Ex. 1 at 11.) At the *Sell* hearing, Dr. Cochrane reaffirmed this opinion by testifying that, within the confines of FMC Butner, Defendant has been calm and stable and does not pose a threat to himself or others. Given this evidence, it is clear that involuntary administration of drugs is not justified pursuant to *Harper*, and the *Sell* factors provide the proper analysis.

The Supreme Court did not articulate the standard of proof which applies when considering the *Sell* factors. However, consistent with every other circuit to consider the issue, the Eleventh Circuit held in *United States v. Diaz* that the relevant findings must be supported by clear and convincing evidence. 630 F.3d 1314, 1332 (11th Cir. 2011). Accordingly, the undersigned applies the clear and convincing evidence standard in addressing each of the *Sell* factors.

## A.     Important Government Interest

The Government argues that it has an important interest in bringing Defendant to trial because he is charged with a serious crime.  (Doc. 44 at 7-8.)  In support of its argument, the Government cites the maximum 10-year sentence authorized under the statute.  (*Id.* at 8 (citing 26 U.S.C. § 5871).)  It also discusses some of the alleged facts relating to the charged offense: "This crime involved [Defendant] traveling to a Naval Installation with the weapon and ammunition in his vehicle because 'they' ['the people'] were telling him to kill the President." (*Id.*)  The Government concludes that no "special circumstances" outweigh the primary factor—the seriousness of the offense—in the analysis of whether there is an important government interest.  (*Id.*)

During oral argument at the *Sell* hearing, Defendant's counsel argued that the Government's interest in moving this case forward is outweighed by Defendant's interest in not being involuntarily medicated with drugs that carry the possibility of harmful side effects.  As discussed below, the undersigned finds that the Government has an important interest in prosecuting this case because the crime with which Defendant is charged is "serious" and special circumstances do not undermine the importance of the Government's interest in prosecution.

### 1.     Serious Crime

"The Government's interest in bringing to trial an individual accused of a *serious* crime is important."  *Sell*, 539 U.S. at 180 (emphasis added).  The Supreme Court recognized the Government's role in prosecuting serious crimes "to protect through application of the criminal law the basic human need for security."  *Id.* (citation omitted).

In considering whether an offense is "serious," the U.S. Courts of Appeals are somewhat split as to whether district courts should consider the maximum penalty, the sentencing guideline range, or a combination of the two. *Compare United States v. White*, 620 F.3d 401, 410-11 (4th Cir. 2010) (considering only the maximum penalty); *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008) (same); *United States v. Palmer*, 507 F.3d 300, 304 (5th Cir. 2007) (indicating that the maximum penalty, rather than the guideline range is the appropriate consideration) *with United States v. Hernandez-Vasquez*, 513 F.3d 908, 919 (9th Cir. 2008) (stating that "the likely guideline range is the appropriate starting point for the analysis fo a crime's seriousness); *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1226 (10th Cir. 2007) (considering both the maximum penalty and the "likely" guideline range). Here, in the absence of controlling Eleventh Circuit authority and noting that the guidelines are only advisory, the undersigned applies the "maximum penalty" test in determining that the crime with which Defendant is charged is serious. Defendant faces a maximum term of imprisonment of ten years. 26 U.S.C. § 5871. Moreover, the alarming circumstances surrounding the alleged commission of the crime also weigh in favor of recognizing the crime as serious. Further, since the crime charged involves unlawful possession of a firearm, the Government has an interest in securing a felony conviction so that Defendant may no longer possess firearms of any type.[4] Thus, the undersigned concludes that Defendant is charged with a serious crime in this case.

_____

[4] Defendant appears to have no felony convictions.

## 2.    Special Circumstances

A court "must [also] consider the facts of the individual case in evaluating the Government's interest in prosecution."  *Sell*, 539 U.S. at 180.  The Government's interest may be diminished under "[s]pecial circumstances," such as the possibility of civil commitment amounting to lengthy confinement which could "diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime" or "the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed . . .)."  *Id.*; *see also United States v. Bradley*, 417 F.3d 1107, 1116 (10th Cir. 2005) (stating "[a]s we read *Sell*, this . . . example suggests that when the amount of time the defendant is confined pending determination of competency is in parity with an expected sentence in the criminal proceeding, the Government may no longer be able to claim an important interest in prosecution").

Taking into account the "special circumstances" contemplated in *Sell*, the undersigned finds, for the reasons set forth below, that the Government's interest in bringing Defendant to trial is not undermined.

### a.    Prospect of Civil Commitment

During the *Sell* hearing, Dr. Cochrane testified that Defendant has not been evaluated to determine whether he meets the criteria for involuntary civil commitment pursuant to 18 U.S.C. § 4246.  Thus, at this time, the Court can only speculate as to the likelihood of civil commitment, and the potential length thereof.  Therefore, the Court finds that the mere possibility of civil commitment does not undermine the

11

Government's interest in prosecution. *See United States v. Algere*, 396 F. Supp. 2d 734, 740 (E.D. La. 2005) (finding that "[e]ven if [the defendant] were a prospect for civil commitment, . . . this factor does not completely undermine the government's strong interest in bringing [the defendant] to trial," when, "[a]t the hearing, the doctors did not provide an opinion about whether [the defendant] would be a prospect for civil commitment . . . if he were not medicated"); *see also Sell*, 539 U.S. at 180 ("The potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution.").

### b.      Potential Credit for Time Served

Defendant has currently served over nine months in pretrial confinement. (Doc. 10; *see also* Doc. 13.)   Although this is a noteworthy length of time, Defendant potentially faces the statutory maximum penalty of ten years imprisonment. *See United States v. Gomes*, 621 F.3d 1343, 1345 (11th Cir. 2010) (citing *United States v. Booker*, 543 U.S. 220, 258-59 (2005)).  Moreover, no argument or evidence has been presented regarding Defendant's likely sentencing guideline range.  For these reasons, the undersigned finds that the Government's interest in prosecution is not undermined by potential credit for time served. *See United States v. Evans*, 404 F.3d 227, 237-39 (4th Cir. 2005) (finding that the Government's interest was not defeated where the crime charged carried a ten-year maximum sentence even though the defendant argued his probable guideline range was only fourteen to twenty months and he had already served more than two years in pretrial detention).

### c. The Nature of the Alleged Crime

The Fourth Circuit recognized in the *White* case that it is proper to consider the nature of the alleged crime in analyzing whether special circumstances undermine an important government interest. 620 F.3d at 413. This is supported by the Supreme Court's broad statement in *Sell* that district courts "must consider the facts of the individual case in evaluating the Government's interest in prosecution." 539 U.S. at 180.

As discussed above, Defendant is charged with possession of an unregistered 12-gauge sawed-off shotgun (Doc. 1), which he allegedly possessed, along with ammunition, while en route to a Naval Installation "because 'they' ['the people'] were telling him to kill the President" (Doc. 44 at 8). The undersigned considers these allegations in its analysis and finds that they support a finding that the Government has an important interest in bringing Defendant to trial.

### B. Significant Furtherance of the Government Interest

In *Sell*, the Supreme Court stated that courts must make two findings in order to conclude that involuntary medication will significantly further the Government's interest. 539 U.S. at 181. First, a court "must find that administration of the drugs is substantially likely to render the defendant competent to stand trial." *Id.* Second, a court "must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Id.* (citation omitted).

At the hearing, Defendant's evaluators provided convincing testimony relevant

13

to each of the required findings. With regard to the first finding, both Drs. Cochrane and Herbel testified that treatment pursuant to the proposed treatment plan, with any one of the three recommended antipsychotic medications, would be substantially likely to render Defendant competent to stand trial. On this point, they based their conclusions on their own professional experience and on several studies, which reflect a success rate of greater than seventy percent for restoring competency. The evaluators' testimony regarding this finding is consistent with their opinions expressed in the Report.[5] Based on the doctors' opinions on this subject, the Government has proved by clear and convincing evidence that antipsychotic medication is substantially likely to restore Defendant's competency to proceed. *See United States v. Gomes*, 387 F.3d 157, 161-62 (2d Cir. 2004) (affirming the district court's conclusion that there was a substantial likelihood of restoration of competency through medication when "doctors noted a 'substantial probability' that anti-psychotic medication would render [the defendant] competent," and the district court cited a seventy percent success rate in restoring defendants' competence to proceed).

As to the second finding, Dr. Herbel testified at length about his proposed treatment plan (*see* Ex. 1 at 30-34). He also testified as follows regarding potential side effects. For any of the three proposed drugs, there are two broad categories of common side effects: neuromuscular and metabolic. The most common neuromuscular side effects are muscle stiffness, muscle cramps, and restlessness. However, these

---

[5] Unless otherwise indicated, the doctors' testimony discussed herein is consistent with the Report.

side effects are easily treated by either dose reduction or the addition of an adjunctive medication. The most common metabolic side effects are weight gain, increased risk of diabetes, increased lipids, and elevated blood pressure. However, by regularly weighing a patient and doing regular blood tests, these side effects can be monitored and prevented.

Any of the three proposed medications also introduces a slight increased risk of sudden death, neuroleptic malignant syndrome, suicidal thoughts, and seizures. However, Dr. Herbel emphasized that these possibilities are extraordinarily rare. In the Report, he further emphasized the rarity of these dangerous side effects. For example, he states, "The low frequency of [neuroleptic malignant syndrome] is reflected by the absence of any identified cases of [it] at FMC Butner, which opened a 300 bed inpatient psychiatric facility in November of 2000." (Ex. 1 at 23.) He also states, "The risk of sudden death in the general adult population is approximately seven events per 10,000 person years, compared to 10 to 15 events per 10,000 person years in populations treated with antipsychotic medication. It is unclear to what extent the increased risk of sudden death is attributed to the effects of treatment with antipsychotic medication and to what extent the increased risk is due to other factors, such as lifestyle." (*Id.*) The Court is satisfied by clear and convincing evidence that, although the risk of serious side effects, including death, obviously cannot be ignored, such side effects are rare enough that they should not pose an insurmountable obstacle to attempting to restore Defendant's competency.

Ultimately, Dr. Herbel testified that the administration of any of the three

antipsychotic medications in accord with the proposed treatment plan is substantially unlikely to have side effects that would interfere with Defendant's ability to assist his attorney in conducting his defense. The Court accepts this testimony and finds that the Government has proved by clear and convincing evidence that the proposed medication(s) are substantially unlikely to have side effects that will significantly interfere with Defendant's ability to assist his counsel.

Based on the foregoing, the Government has proved by clear and convincing evidence that its interest will be significantly furthered by the administration of antipsychotic medication.

### C. Necessary to Further the Government Interest

In *Sell*, the Supreme Court indicated that for the administration of antipsychotic medication to be deemed necessary to further the Government's interest, a court must (1) "find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results"; and (2) consider less intrusive means for administrating the drugs, *e.g.*, a court order to the defendant backed by the contempt power, before considering more intrusive methods." *Sell*, 539 U.S. at 181.[6]

As to the first requirement, Drs. Cochrane and Herbel testified that Defendant is currently not competent to stand trial, and that there are no alternative treatments that are likely to achieve the same results as the administration of antipsychotic medication.

---

[6] Regardless of whether the involuntary administration of medication is to be by contempt-backed order or by court-authorized forced injection, the Court must engage in the analysis set forth in *Sell*. *See Bradley*, 417 F.3d at 1113 n.11; *United States v. Williams*, 356 F.3d 1045, 1054 n.10 (9th Cir. 2004).

For example, psychotherapy alone will likely not be successful.  Moreover, the doctors testified that Defendant has repeatedly refused antipsychotic medication.  Based on the doctors' testimony, the Government has proved by clear and convincing evidence that alternative, less intrusive treatments are unlikely to achieve substantially the same results as involuntary administration of antipsychotic medication.

Regarding the second requirement, when questioned by the Court at the hearing, Defendant stated that he would take antipsychotic medication if the Court entered a contempt-backed order that he do so.  Given this statement, and the Government's lack of opposition to trying a contempt-backed order first, the undersigned recommends that the Court enter a contempt-backed order that Defendant accept the doctors' proposed treatment before potentially entering an order authorizing forced injection of the drugs.  The undersigned also recommends that, after the Court enters a contempt-backed order, Defendant be given a one-month trial period to demonstrate that forced injection is unnecessary.  In the event that Defendant fails to comply with the subject contempt-backed order, the undersigned recommends that the Court enter an order authorizing the involuntary medication of Defendant in accord with the proposed treatment plan, including the forced injection of antipsychotic drugs.

In accordance with the foregoing, the Government has proved by clear and convincing evidence that the administration of antipsychotic medication is necessary to further its interest.

**D.**     **Medically Appropriate in Light of Patient's Medical Circumstances**

The Supreme Court stated in Sell that the district court "must conclude that

administration of the drugs is *medically appropriate, i.e.*, in the patient's best medical interest in light of his medical condition." 539 U.S. at 181. At the hearing, Drs. Cochrane and Herbel testified that the administration of antipsychotic medication to Defendant, in accord with the proposed treatment plan, is medically appropriate. Given this testimony, the Government has proved by clear and convincing evidence that the administration of the drugs in accord with the proposed treatment plan is medically appropriate.

## V.  Conclusion

Having considered the *Sell* factors and finding that each one is met by clear and convincing evidence, the undersigned finds that involuntary medication of Defendant, in accord with the proposed treatment plan, is appropriate. Accordingly, it is respectfully **RECOMMENDED** that:

The Motion (**Doc. 43**) be **GRANTED** as follows:

A.    Defendant be ordered to remain in the custody of the Attorney General at FMC Butner for treatment to restore his competency to proceed to trial.

B.    The Court enter a contempt-backed order that Defendant accept the antipsychotic medication and any related treatment prescribed by the doctors at FMC Butner, in accord with the proposed treatment plan, except not yet authorizing forced injection of medication. From the date that this order is received by officials at FMC Butner, Defendant should be given a one-month trial period to demonstrate his compliance with the contempt-backed order, and thus, that forced injection of the drugs is unnecessary. The evaluators at FMC Butner should be ordered to file a report with

18

the Court upon completion of the one-month trial period, in which they state whether Defendant has complied with the contempt-backed order, and if applicable, provide the status of Defendant's treatment, his response thereto (including any side effects), and a prognosis. Copies should be furnished to the Honorable Joel B. Toomey, U.S. Magistrate Judge, 300 N. Hogan Street, Suite 5-211, Jacksonville, Florida 32202; Sara Neugroschel, Assistant U.S. Attorney, 300 N. Hogan Street, Suite 700, Jacksonville, Florida 32202; and Earl M. Johnson, Jr., Esquire, P.O. Box 40091, Jacksonville, Florida 32203. If Defendant has fully complied with the contempt-backed order, then that order should remain in effect, and Defendant should be allowed to continue accepting the doctors' prescribed treatment without court-authorized forced injection.

C.     Alternatively, or if Defendant fails to comply with the contempt-backed order discussed herein, the Court enter an order authorizing that Defendant be involuntarily medicated in accord with the proposed treatment plan (*see* Ex. 1 at 30-34), including forced injection of medication and any appropriate physical and laboratory assessments and monitoring.

D.     For the duration of Defendant's involuntary medication (either in compliance with contempt-backed order or by subsequent order authorizing forced injection), the evaluators at FMC Butner should be ordered to file with the Court a report every thirty days, providing the status of Defendant's treatment, his response thereto (including any side effects), and a prognosis. Copies should be furnished to the Honorable Joel B. Toomey, U.S. Magistrate Judge, 300 N. Hogan Street, Suite 5-211, Jacksonville, Florida 32202; Sara Neugroschel, Assistant U.S. Attorney, 300 N. Hogan

19

Street, Suite 700, Jacksonville, Florida 32202; and Earl M. Johnson, Jr., Esquire, P.O. Box 40091, Jacksonville, Florida 32203.

E.     Once the Bureau of Prisons believes the medications have restored Defendant to competency, or believes the medications will not do so, the Bureau of Prisons should be ordered to file with the Court a report so stating.  If the Bureau of Prisons believes Defendant has been restored to competency, the report should address whether the medications should be continued at trial, how such medications might affect Defendant at trial, and how to monitor the effects of the medication throughout the trial.[7]

F.     Defendant remain at FMC Butner pending further order of the Court.

G.     The attorney for the Government be ordered to monitor the Bureau of Prisons' compliance with any order entered.

**DONE AND ENTERED** at Jacksonville, Florida, on November 30, 2011.


*Joel B. Toomey*
_____
JOEL B. TOOMEY
United States Magistrate Judge

---

[7] Although the Government suggests that, if and when Defendant attains competency, the Court could enter an order authorizing ongoing involuntary treatment until the conclusion of all pretrial and trial proceedings (Doc. 44 at 16), the Court need not now address this issue.  If Defendant attains competence, the Court will consider entering an order at that time addressing the need to keep Defendant competent through trial.

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Assistant U.S. Attorney (Sara Neugroschel)

Earl M. Johnson, Jr., Esquire

Defendant (via U.S. Marshal)